**IN THE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES ex rel.** | ) | |
| **ROSENDO HERNANDEZ,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **06-2183** |
| | ) | |
| **DON HULICK, Warden,** | ) | **The Honorable** |
| **Respondent.** | ) | **Elaine E. Bucklo,** |
| | ) | **Judge Presiding.** |

## ANSWER

Now comes respondent, Don Hulick, by his attorney, Lisa Madigan, Attorney General of Illinois and, pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, answers the above-captioned petition for writ of habeas corpus as follows:

1. Petitioner, Rosendo Hernandez, inmate number K-81460, is in the custody of Don Hulick, acting warden of the Menard Correctional Center.

2. Following a jury trial in Cook County, Illinois, petitioner was convicted of first degree murder, attempted murder and aggravated battery with a firearm. Petitioner was sentenced to 55 years' imprisonment for the murder of Jorge Gonzalez, 25 years for attempted murder of Juan Carlos Cruz, and 20 years for aggravated battery. The court ordered the sentence for aggravated battery to run consecutively to the concurrent sentences for murder and attempted murder.

3. Petitioner appealed to the Appellate Court of Illinois, First District. (Exhibit A). The State filed a responsive brief, (Exhibit B), and petitioner filed a reply. (Exhibit C). Petitioner argued that: (1) he received ineffective assistance of counsel when his attorney failed to present certain alibi

1

witnesses; (2) his sixth amendment right to an impartial jury was violated where defense counsel failed to investigate bias against gangs among the jurors; (3) the trial court erred in admitting evidence of the gang affiliations and ranks of petitioner and various witnesses; and (4) his sentences were excessive and violated Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000).  On July 30, 2002, the appellate court affirmed petitioner's convictions and sentences.  People v. Hernandez, No. 1-00-1916 (unpublished order under Supreme Court Rule 23).  (Exhibit D).

4.  Petitioner filed a petition for leave to appeal (PLA) with the Illinois Supreme Court making the same allegations as presented to the appellate court.  (Exhibit E).  On December 5, 2002, the Illinois Supreme Court denied the PLA.  People v. Hernandez, No. 94769.  (Exhibit F).

5.  On June 3, 2003, petitioner filed a petition for post-conviction relief alleging:  (1) trial counsel was ineffective when counsel did not object to the issuance of IPI Criminal 3d No. 3.15; (2) trial counsel was ineffective for failing to file a pre-trial motion challenging petitioner's arrest; (3) trial counsel was ineffective for failing to procure an expert witness to testify to the unreliability of eyewitness identification; (4) trial counsel was ineffective for failing to challenge witnesses' identifications at trial, when he knew prior to trial that those eyewitnesses had been shown "photo books" of known Spanish Cobra gang members and failed to identify petitioner; (5) trial counsel was ineffective for failing to conduct a meaningful pre-trial investigation of the case; (6) trial counsel was ineffective for failing to file a motion to suppress lineup identification based upon a lack of probable cause to arrest; (7) trial counsel was ineffective for failing to locate, interview or call known witnesses that could have provided favorable testimony for petitioner; (8) trial counsel was ineffective for failing to file a motion in limine seeking to prohibit the prosecution from eliciting testimony regarding petitioner's co-defendant; (9) trial counsel was ineffective when he allowed the

police to question petitioner without knowing the underlying facts of the shooting; (10) trial counsel was ineffective for failing to subpoena the police photo gang books of members of the Spanish Cobra Street gang; (11) trial counsel was ineffective for failing to make use of an expert witness on gangs; (12) trial counsel was ineffective where the cumulative effect of constitutional violations at trial warranted relief; (13) appellate counsel was ineffective for failing to raise a reasonable doubt argument; (14) appellate counsel was ineffective where counsel labored under a conflict of interest in representing petitioner on appeal; and (15) appellate counsel was ineffective for failing to raise an issue regarding trial counsel's pervasive ineffectiveness. Petitioner also asked that Judge Lon William Schultz recuse himself from the post-conviction proceedings, that petitioner be appointed counsel, and that the post-conviction court hold an evidentiary hearing. (Exhibit G). On August 8, 2003, the trial court denied the post-conviction petition. (Exhibit H).

6. Petitioner appealed to the Illinois Appellate Court, First District, alleging that the circuit court erroneously applied a harmless error analysis at the first stage of post-conviction proceedings and that trial counsel was ineffective for failing to challenge the issuance of Illinois Pattern Jury Instruction, Criminal No. 3.15 (3d ed. 1992) (IPI Criminal 3d No. 3.15), on the ground that it was an improper jury instruction on eyewitness identification. Petitioner further asserted that his consecutive sentences were improper. (Exhibit I). The State filed a responsive brief, (Exhibit J), and petitioner filed a reply. (Exhibit K). On June 30, 2005, the Illinois Appellate Court affirmed. People v. Hernandez, No. 1-04-0533 (unpublished order under Supreme Court Rule 23). (Exhibit L).

7. Petitioner filed a PLA with the Illinois Supreme Court alleging that his consecutive sentences were invalid because the evidence did not show that the victim of the aggravated battery

3

suffered severe bodily injury, and that he presented the gist of a meritorious claim that direct appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for failing to object to IPI Criminal 3d No. 3.15, since he was denied a fair trial by admission of that instruction. (Exhibit M). On December 1, 2005, the Illinois Supreme Court denied the PLA. People v. Hernandez, No. 101212. (Exhibit N).

8. On April 19, 2006, petitioner filed the instant petition for writ of habeas corpus alleging: (1) direct appellate counsel was ineffective for failing to allege that petitioner had not been proven guilty beyond a reasonable doubt; (2) trial counsel was ineffective for failing to object to IPI Criminal 3d No. 3.15, asserting that instruction was unconstitutional on its face; (3) direct appellate counsel was ineffective for failing to present the issue of trial counsel's incompetence for failing to object to IPI Criminal 3d No. 3.15; (4) trial counsel was ineffective for failing to interview and call alibi witnesses Jennifer Pinkston, Jeanine Gomolinski, and Abraham Gutierrez; (5) the police arrested petitioner without probable cause; (6) trial counsel was ineffective for failing to make a motion to quash petitioner's arrest; (7) trial counsel was ineffective for failing to make a motion to quash the lineup identification based on suggestiveness; (8) direct appellate counsel was ineffective for failing to raise the issue of trial counsel's incompetence for failing to move to quash petitioner's arrest and suppress the lineup identification; (9) trial counsel was ineffective for failing to call an expert witness to testify about the unreliability of eyewitness identification; (10) direct appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for failing to call an expert witness to testify about the unreliability of eyewitness identification; (11) trial counsel was ineffective for failing to conduct a meaningful pre-trial investigation of the case; (12) direct appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to

conduct a meaningful pre-trial investigation of the case; (13) trial counsel was ineffective for failing to file a motion *in limine* seeking to prohibit the State from mentioning petitioner's co-defendant; (14) direct appellate counsel was ineffective for failing to raise the issue of trial counsel's incompetence for failing to file a motion *in limine* seeking to prohibit the State from mentioning co-defendant's name; (15) trial counsel was ineffective for allowing the police to question petitioner when counsel did not know the facts of the case; (16) direct appellate counsel was ineffective for failing to raise the issue of trial counsel's incompetence for allowing the police to question petitioner without knowing the facts of the case; (17) trial counsel was ineffective for failing to call an expert gang witness; (18) the cumulative effect of trial counsel's incompetence warranted relief; (19) direct appellate counsel was ineffective because he was laboring under a conflict of interest; (20) direct appellate counsel was ineffective for failing to raise instances of trial counsel's incompetence; (21) trial counsel was ineffective for failing to object to in-court and out-of court identifications; (22) direct appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel for failing to object to identifications; (23) trial counsel was ineffective for failing to locate, interview and call witnesses the could have been favorable to petitioner, namely Hector Vasquez, Nicole Nathaniel, Maria Gutierrez, and Elbia Gutierrez; (24) appellate counsel was ineffective for failing to raise the issue of trial counsel's incompetence for failing to locate, interview and call witnesses; (25) trial counsel was ineffective for failing to mount sufficient attacks on the State's witnesses; (26) appellate counsel was ineffective for failing to raise the effective assistance of trial counsel for failing to mount sufficient attacks on the State's witnesses; (27) trial counsel was ineffective for failing to subpoena the police mug books of the Spanish Cobra Street gang; (28) direct appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel

for failing to subpoena the police mug books of the Spanish Cobra Street gang; and (29) the cumulative effects of the constitutional violations warrants relief. Petitioner also asserts that any procedural defaults should be excused because post-conviction appellate counsel was ineffective and laboring under a conflict of interest when he abandoned most of petitioner's post-conviction allegations on appeal.

9. On May 11, 2006, this Court ordered respondent to respond. Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, the following state court materials, deemed relevant by respondent, have been filed as Exhibits under separate cover:

Exhibit A: Petitioner's brief on appeal, People v. Hernandez, No. 1-00-1916;

Exhibit B: State's brief on appeal, People v. Hernandez, No. 1-00-1916;

Exhibit C: Petitioner's reply brief, People v. Hernandez, No. 1-00-1916;

Exhibit D: Appellate court order, People v. Hernandez, No. 1-00-1916;

Exhibit E: Petitioner's PLA, People v. Hernandez, No. 94769;

Exhibit F: Denial of PLA, People v. Hernandez, No. 94769;

Exhibit G: Post-conviction petition, People v. Hernandez, No. 97 CR 21329;

Exhibit H: Order denying post-conviction petition, People v. Hernandez, No. 97 CR 21329;

Exhibit I: Petitioner's brief on appeal, People v. Hernandez, No. 1-04-0533;

Exhibit J: State's brief on appeal, People v. Hernandez, No. 1-04-0533;

Exhibit K: Petitioner's reply brief, People v. Hernandez, No. 1-04-0533;

Exhibit L: Appellate court order, People v. Hernandez, No. 1-04-0533;

Exhibit M: Petitioner's PLA, People v. Hernandez, No. 101212;

Exhibit N: Denial of PLA, People v. Hernandez, No. 101212.

Exhibit O: Motion to quash lineup identification, <u>People v. Hernandez</u>, No. 97 CR 21329.

10.  The petition can be disposed of based upon the filed pleadings and the exhibits submitted herewith.  *See* <u>Simental v. Matrisciano</u>, 363 F.3d 607, 612 (7th Cir. 2004) (decision whether transcripts are necessary left to sound discretion of the district court; review of state court transcript quite rare); <u>United States ex rel. Green v. Greer</u>, 667 F.2d 585, 586-90 (7th Cir. 1981) (examination of record not required if petitioner fails to identify any incompleteness or inaccuracies in the facts before the district court).  The state court record is currently in respondent's possession.

11.  Petitioner has exhausted his state court remedies in that the time for filing state court proceedings has expired.  However, some issues that should have been raised in state court were not, making them procedurally defaulted before this Court.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 841-42, 119 S.Ct. 1728 (1999).

**Standard of Review**

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act (AEDPA) became law, and, accordingly, applies to petitioner's Section 2254 petition, which was filed on April 19, 2006. <u>Benefiel v. Davis</u>, 357 F.3d 655, 659 (7th Cir. 2004); <u>Lindh v. Murphy</u>, 521 U.S. 320, 323, 117 S.Ct. 2059 (1997).  The "highly deferential standard" imposed by Section 2254(d)(1) "demands that state court decisions be given the benefit of the doubt," (<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24, 123 S.Ct. 357 (2002)), and requires that this Court, to the greatest extent possible, respect the legal and factual dispositions made by the Illinois courts, even if it disagrees with them.  To confer habeas relief premised on mere disagreement with a state court decision, even if that decision is "wrong" in the independent judgment of the federal courts, necessarily "exceeds the limits imposed on federal habeas review" by the AEDPA.  <u>Visciotti</u>, 537 U.S. at 20.

The AEDPA permits this Court to grant habeas corpus relief only if petitioner meets his burden to show that the state court's decision on the merits of a constitutional claim is either "contrary to," or employs an "unreasonable application of" United States Supreme Court precedent, or was premised on an unreasonable determination of facts. 28 U.S.C. § 2254(d)(1-2)); *see also* Weeks v. Angelone, 528 U.S. 225, 237, 120 S.Ct. 727 (2000); Coleman v. Ryan, 196 F.3d 793, 795-96 (7th Cir. 1999). A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law; [or] if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the United States Supreme Court]." Williams v. Taylor, 529 U.S. 362, 404-13, 120 S.Ct. 1495 (2000). This Court is obligated to deny habeas relief under the "contrary to" clause even if the state reviewing court's decision is not an exemplar of good legal drafting: "[a]voiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362 (2002) (emphasis in original).

With respect to the "unreasonable application" prong, the Court prescribed the following objective test: "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. The Court cautioned that "an unreasonable application of federal law is different from an *incorrect* application of federal law." Williams, 529 U.S. at 410 (emphasis in original). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 410; *see also* Ramdass v. Angelone, 530 U.S. 156, 166, 120 S.Ct. 2113 (2000) (a petitioner cannot secure habeas relief unless, "under clearly established federal law, the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled").

Furthermore, the meaning of the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to the holdings, as opposed to the *dicta*, of the Supreme Court's decisions as of the time of the relevant state-court decision. Williams, 529 U.S. at 412. Thus, § 2254(d)(1) restricts the source of clearly established law to Supreme Court jurisprudence. Williams, 529 U.S. at 412.

In short, the constitutional judgments made by state courts are no longer open to *de novo* review in the habeas forum, as the AEDPA "leaves primary responsibility to the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable." Visciotti, 537 U.S. at 27; *see also* Sanchez v. Gilmore, 189 F.3d 619, 623 (7th Cir. 1999) ("the upshot of all this is that federal review is now severely restricted; the fact that we may think certain things could have been handled better by the state trial judge or by the prosecuting attorney or by a state reviewing court means very little"). This Court must also presume that the state courts know and follow the dictates of federal constitutional law. Visciotti, 537 U.S. at 24.

The deferential standard governing this Court's substantive examination of the constitutional decisions of the state courts on habeas review is mirrored by the equally deferential manner in which this Court must examine state court findings of fact. Whether developed in state trial or appellate courts, federal habeas courts must presume that the state court findings of fact are correct. Sumner

<u>v. Mata</u>, 449 U.S. 539, 546, 101 S.Ct. 764 (1981).  A petitioner contesting findings of fact bears the burden of rebutting this presumption of correctness with clear and convincing evidence.  *See* 28 U.S.C. §2254(e)(1).  Therefore, all facts developed in the course of petitioner's trial and appeal are to be presumed correct for purposes of these collateral proceedings, absent a clear and convincing showing by petitioner that they are unreasonable.

"When the case falls under § 2254(d)(1)'s 'contrary to' clause, we review the state court decision *de novo* to determine the legal question of what is clearly established law as determined by the Supreme Court and whether the state court decision is 'contrary to' that precedent.  When the case fits under the 'unreasonable application of' clause of § 2254(d)(1), however, we defer to a reasonable state court decision."  <u>Anderson v. Cowan</u>, 227 F.3d 893, 896-97 (7th Cir. 2000) (internal citations omitted).  A state court satisfies the reasonableness standard if its application is "at least minimally consistent with the facts and circumstances of the case."  <u>Spreitzer v. Peters</u>, 114 F.3d 1435, 1442 (7th Cir. 1997) (citation omitted); *see also* <u>Hardaway v. Young</u>, 302 F.3d 757, 762 (7th Cir. 2002) (unreasonable application defined as outside the boundaries of permissible differences of opinion).

**<u>Procedural default</u>**

A petitioner may seek federal habeas review only if he has exhausted all available state court remedies, and in the course of those proceedings, fully and fairly presented his constitutional claims to the State's courts.  <u>Farrell v. Lane</u>, 939 F.2d 409, 410 (7th Cir. 1991).  This aspect of the procedural default inquiry focuses on whether the petitioner's federal claims were fairly presented to the state courts.  <u>Verdin v. O'Leary</u>, 972 F.2d 1467, 1474 (7th Cir. 1992).  Moreover, a petitioner seeking habeas corpus relief is required to survive procedural default prior to any examination of the

petition's merits.  Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546 (1991).  Procedural default occurs in either of two ways.  One involves a petitioner who, although diligently pursuing all appeals required under state law, nevertheless fails to raise the federal claims that he later attempts to assert as the basis for his federal habeas petition.  Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497 (1977).  Petitioner can fail to "fairly present" the claim or fail to present the claim at all.  To provide the State with the necessary "opportunity," the petitioner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.  Baldwin v. Reese, 541 U.S. 27, 31-2, 124 S.Ct. 1347 (2004).  And, passing references to potential federal claims in a petition for discretionary review are insufficient to satisfy the fair presentment requirement, even if the federal nature of the claims is spelled out in lower court filings and opinions.  Baldwin, 541 U.S. at 32.

The legal basis upon which a petitioner seeks relief must be fairly presented to the court: "[f]ederal judges will not presume that state judges are clairvoyant." *See* Verdin, 972 F.2d at 1479 (*quoting* Petrucelli v. Coombe, 735 F.2d 684, 689 (2nd Cir. 1984)).  The purpose of the rules of procedural default is to afford to the state courts an opportunity to correct a constitutional violation. Duckworth v. Serrano, 454 U.S. 1, 4, 102 S.Ct. 18 (1981).  Such an opportunity is grounded in principles of comity; in a federal system the States should have the first chance to address and correct alleged violations of a state prisoner's federal rights. Coleman, 501 U.S. at 731.

Secondly, procedural default can occur when the state court declined to address a claim because the petitioner failed to comply with a state procedural requirement.  Coleman, 501 U.S. at 729; Barksdale v. Lane, 957 F.2d 379, 382 (7th Cir. 1992).  If that forfeiture is a state law ground that is independent and adequate to support his conviction, he has procedurally defaulted the claim.

Coleman, 501 U.S. at 729. Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038 (1989), announced a rule for determining when a procedural default under state law forecloses federal relief on collateral attack: if the state enforces its procedural rules and deems the claim forfeited, then federal review is barred; if the state excuses a default, then federal review is proper. Harris added that if the state's decision rests on both a procedural default and a lack of merit, then federal review is foreclosed, provided the finding of default is clear. Harris, 489 U.S. at 264, n.10. A finding of default is sufficient to preclude federal habeas corpus review, even though the state court may have discussed the merits of petitioner's claim in an alternative holding. See id.; Fernandez v. Sternes, 227 F.3d 977, 981 (7th Cir. 2000). On the other hand, a state court has considered a case on the merits "'unless the last state court rendering judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" Jefferson v. Welborn, 222 F.3d 286, 288 (7th Cir. 2000) (quoting Harris, 489 U.S. at 263).

A procedural default bars review absent a showing of cause for the default and actual prejudice resulting therefrom. Gray v. Netherland, 518 U.S. 152, 161-66, 116 S.Ct. 2074 (1996). A petitioner can demonstrate cause "by showing that 'some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rules.'" United States ex rel. Taylor v. Barnett, 109 F.Supp.2d 911, 920 (N.D. Ill. 2000) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2678 (1986)). While counsel's failure to raise certain issues due to counsel's ineffective assistance may fall within the cause and prejudice exception, (see Schlup v. Delo, 513 U.S. 298, 314, 115 S.Ct. 851 (1995)), federal courts may not engage in such analysis if state courts were not first presented with the ineffective assistance claim. Edwards v. Carpenter, 529 U.S. 446, 451-52, 120 S.Ct. 1587 (2000); Lemons v. O'Sullivan, 54 F.3d 357, 360 (7th Cir. 1995) ("Before a state prisoner

12

can use ineffective assistance of counsel as cause for procedural default, he must first present this claim as an independent claim to the state courts either on direct appeal or in a post-conviction proceeding").

Alternatively, the petitioner can present his defaulted claims if he can show that failure to consider them will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. A fundamental miscarriage of justice has occurred when the petitioner can establish that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup, 513 U.S. at 315, 327. Accordingly, without new evidence of innocence, even a meritorious constitutional claim is not sufficient to allow a habeas court to reach the merits of a procedurally defaulted claim. United States ex rel. Bell v. Pierson, 267 F.3d 544, 551 (7th Cir. 2001) (citing Schlup, 513 U.S. at 316). See House v. Bell, Doc. No. 04-8990 (June 12, 2006).

**Claims Presented**

**Claim one - direct appellate counsel was ineffective when counsel failed to allege that petitioner had not been proven guilty beyond a reasonable doubt.**

Petitioner's first claim is that direct appellate counsel was ineffective for failing to allege that petitioner had not been proven guilty beyond a reasonable doubt. This claim was raised in petitioner's post-conviction petition. However, it was not raised on appeal from the denial of that petition, nor was it raised in petitioner's ensuing PLA. It is therefore procedurally defaulted. The United States Supreme Court has explained that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728 (1999). In Illinois, "one complete round" is finished once the petitioner has presented his claims

either on direct appeal or on post-conviction review at *each stage* of the appellate process, up through and including the Illinois Supreme Court. Id. at 847-48 (emphasis added). United States ex rel. Williams v. Bowen, 2005 WL 3299231, *3 (N.D. Ill. 2005). Issues not carried through an entire round of appellate review are procedurally defaulted and cannot be reviewed in a federal habeas proceeding. Boerckel, 526 U.S. at 848. Petitioner did not satisfy this requirement with respect to this claim.

Petitioner acknowledges his default in his habeas corpus petition, but alleges an excuse for the default. Petitioner asserts that post-conviction appellate counsel was ineffective and labored under a conflict of interest because counsel worked for the Office of The State Appellate Defender, and therefore was acting as an agent of the State, and deliberately failed to raise petitioner's post-conviction claims on appeal and in his PLA. (Petition at 6(a)). However, to the extent petitioner blames his post-conviction counsel for the omission, such a claim is not cognizable in habeas proceedings. *See* 28 U.S.C. § 2254(i); *see also* Steward v. Gilmore, 80 F.3d 1205, 1212 (7th Cir. 1212 (7th Cir. 1996) (ineffective assistance of post-conviction counsel is not itself a cognizable federal constitutional violation and may not serve as cause for a procedural default); Szabo v. Walls, 313 F.3d 392, 397 (7th Cir. 2003) (ineffective assistance of post-conviction counsel does not supply "cause" for the cause-and-prejudice formula under which federal courts can sometimes entertain claims that were not properly presented to the state courts). In any event, petitioner offers nothing to suggest that his attorney was not acting in his best interests. He points to the fact that he complained to the Appellate Defender's office about the failure of counsel to raise certain issues, (petition at 6(a)) however, that does not show that counsel acted inappropriately. Appellate counsel

need not raise every conceivable issue on appeal, and a decision to omit a weak issue may be sound strategic decision.  *See* Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746 (2000).

As an alternative, petitioner alleges that since he did not commit the crime of which he was convicted, the refusal of this Court to reach the merits of his claim would result in a miscarriage of justice.  To avoid procedural default by a claim of actual innocence, however, a petitioner must not only "support his allegations of constitutional error with new reliable evidence that was not presented at trial" but also "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851 (1995).  *See* House v. Bell, Doc. No. 04-8990 (June 12, 2006).  Petitioner has failed to present any such new evidence.  Petitioner alleges, at best, that the evidence was flawed against him based on credibility questions and the sufficiency of the evidence presented at trial.  However, this Court is barred from re-examining the state court's credibility determinations.  *See* Marshall v. Lonberger, 459 U.S. 422, 434, 103 S.Ct. 843 (1983) (federal courts are not given license to redetermine credibility of witnesses whose demeanor has been observed by the state court); Kines v. Godinez, 7 F.3d 674, 678 (7th Cir. 1993) ("Federal courts are in position to redetermine the credibility of witnesses observed by state trial courts.").  Furthermore, the proof was more than adequate where petitioner was observed by five witnesses.  Under Schlup, and House, petitioner must establish that in light of new evidence it would be more likely than not no reasonable juror would  find him guilty.  That he has not done.

**Claims two and three - (2) trial counsel was ineffective where an identification jury instruction given was allegedly unconstitutional on its face, and counsel failed to object; and (3) direct appellate counsel was ineffective where appellate counsel did not present the issue of trial counsel's incompetence for failing to object to the unconstitutional instruction.**

Petitioner's claims two and three pertain to counsel's alleged incompetence in failing to object to IPI Criminal 3d No. 3.15 regarding identification testimony, and the failure of appellate counsel to raise the issue on direct appeal. The Illinois appellate court addressed these claims, and petitioner raised them in his PLA. Thus, they are properly before this Court. The appellate court stated:

> On June 3, 2003, defendant filed a *pro se* postconviction petition in which he alleged, *inter alia*, that trial counsel was ineffective for failing to object to the issuance of IPI Criminal 3d No. 3.15, which provides:
>
> When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:
>
> [1] The opportunity the witness had to view the offender at the time of the offense.
>
> [or]
>
> [2] The witness's degree of attention at the time of the offense.
>
> [or]
>
> [3] The witness's earlier description of the offender.
>
> [or]
>
> [4] The level of certainty shown by the witness when confronting the defendant.
>
> [or]
>
> [5] The length of time between the offense and the identification confrontation. (Brackets in original.) Illinois Pattern Jury Instructions, Criminal, No. 3.15 (3d ed. 1992).

Defendant also alleged that appellate counsel was ineffective for failing to raise this issue on direct appeal.

On August 8, 2003, the circuit court summarily dismissed defendant's petition as frivolous and patently without merit. In addressing defendant's claim about IPI Criminal 3d No. 3.15, the court relied on this court's decision in People v. Gonzalez, 326 Ill.App.3d 629, 641 ( 2001), which held that issuance of the instruction with the word "or" between each of the five factors was improper because it may have mistakenly misled the jury to rely on only a single factor in determining the reliability of identification testimony. The circuit court, however, determined that the error was harmless because the evidence was not closely balanced where five witnesses identified defendant as the shooter.

On appeal, defendant contends that the circuit court concluded that he raised the gist of a meritorious claim that the trial court committed an error in issuing IPI Criminal 3d No. 3.15 with the "ors" but made an improper factual determination that the error was harmless at the first stage of postconviction proceedings. Defendant further asserts that trial counsel and appellate counsel were ineffective for failing to raise the issue below.

Defendant first argues that, although the circuit court determined that he raised the gist of a meritorious claim, the court conducted an improper harmless error analysis at the first stage of postconviction proceedings. Contrary to defendant's assertion, the court never made such a finding. Defendant's concerns are not warranted where this court reviews summary dismissals under a *de novo* standard (People v. Coleman, 183 Ill.2d 366, 388-89, (1998)). We may affirm or reverse on any basis supported by the record, even if the circuit court reasoned incorrectly (People v. Lee, 344 Ill.App.3d 851, 853 (2003)).

\*\*\*

To establish a claim of ineffective assistance of trial counsel, a defendant must show that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) counsel's performance resulted in prejudice to defendant. People v. Villarreal, 198 Ill.2d 209, 228 (2001), *citing* Strickland v. Washington, 466 U.S. 668, 687, 80 L.E.2d 674, 693, 698, 104 S.Ct. 2052, 2064, 2068 (1984).

We find that defendant's challenge to trial counsel's performance lacks merit. Here, defendant was tried and convicted in 1999. Gonzalez was decided in 2001, while defendant's direct appeal was pending. Trial counsel's failure to object to IPI Criminal 3d No. 3.15 in 1999, long before Gonzalez had been decided, cannot be deemed objectively unreasonable or prejudicial to the defendant. *See* People v. Chatman, No. 1-03-2587, slip op. 6-7 (May 12, 2005) (holding the Gonzalez decision could not serve as a basis for the defendant's claims of ineffective assistance of counsel where the defendant's trial and direct appeal concluded before Gonzalez was decided). Where the defendant's claim of ineffective assistance is based on a ruling issued after counsel's service to the defendant ended, the claim must fail. *See* Chatman, slip op. at 7.

We further find that defendant's claim of ineffective assistance of appellate counsel equally lacks merit, but for different reasons. Claims of ineffective assistance of appellate counsel are also judged under the two-prong standard set forth in Strickland. People v. Ward, 187 Ill.2d 249, 258 (1999). To prevail on a claim of ineffective assistance of appellate counsel, a defendant must show that failure to raise the contested issue was objectively unreasonable, and that counsel's decision not to raise the issue prejudiced the defendant. People v. Haynes, 192 Ill.2d 437, 476 (2000). Appellate counsel is not required to brief every conceivable issue on appeal, nor is counsel incompetent for failing to raise issues, which, in his or her judgment, are without merit. Haynes, 192 Ill.2d at 476. A defendant does not incur prejudice from appellate counsel's failure to raise an issue that would not have been successful if raised on direct appeal. People v. Childress, 191 Ill.2d 168, 175 (2000).

Our supreme court recently addressed the jury instruction at issue here in People v. Herron, No. 95135 (May 15, 2005), where it held that tendering IPI Criminal 3d No. 3.15 with the "ors" between each of the five factors constituted plain error. Herron, slip op. at 19. The supreme court explained that the instruction was misleading because it first directed jurors to consider all of the facts and circumstances surrounding the identification, but then, through the use of the conjunction "or," directed jurors to consider only one of the five factors. Herron, slip op. at 19. The court concluded that because the case turned on the credibility of a single witness' identification testimony, and the erroneous jury instruction was directly related to how the jury should weigh such testimony, the defendant demonstrated prejudice because a different instruction may have

resulted in a different verdict.  Herron, slip op. at 21.

We find this case distinguishable from Herron and more akin to the cases where the defendants failed to demonstrate prejudice.  First, we point out that the issue in Herron, which involved the defendant's direct appeal, was whether the improper jury instruction constituted plain error at the defendant's trial.  Here, the issue this court must address is whether appellate counsel's failure to raise this issue on direct appeal amounted to ineffective assistance; namely, whether defendant would have succeeded had the issue been raised on direct appeal.  See Childress, 191 Ill.2d at 175.  While the instruction itself was improper here, defendant's ineffective assistance of appellate counsel claim fails where he cannot show prejudice.  We liken this case to People v. Smith, 341 Ill.App.3d 530 (2003), in which this court held that a similar claim failed in the context of a successive postconviction petition.  In Smith, the defendant argued that his counsel was ineffective for failing to challenge the same jury instruction.  This court first noted that the defendant's failure to raise the claim on direct appeal and in his first petition resulted in waiver.  Smith, 341 Ill.App.3d at 546.  But, after acknowledging that the jury instruction was improper, the court also explained that the claim failed on its merits where the defendant could not show prejudice due to the overwhelming nature of the evidence presented against him, i.e., a reliable and positive identification of the defendant five to six weeks after the shooting and testimony that the defendant confessed.  Smith, 341 Ill.App.3d at 546.  The court concluded that, where the evidence was not closely balanced, the record rebutted the presumption that the improper instruction was outcome determinative.  Smith, 341 Ill.App.3d at 547.

Likewise the evidence in this case was overwhelming.  A total of five witnesses separately identified defendant as one of the shooters from a photo array and a lineup.  The identifications all occurred within three days of the crime.  Also, the witnesses testified to substantially similar versions of the events leading up to the shooting and the shooting itself.  Unlike Herron and Gonzalez, the State here did not improperly instruct the jury during closing arguments.  In fact, the State did not even use the word "or" during its closing argument.  Rather, the State discussed the five factors outlined in IPI Criminal 3d No. 3.15 and applied the facts of the case to those factors.  See Carrero, 345 Ill.App.3d at 13; Mercado, 333 Ill.App.3d at 1000.  Defendant cannot make the requisite showing that the result of the proceedings would have been different had appellate counsel raised

this issue on direct appeal and defendant's claim must fail.

(Exhibit L, at 5-11). The state appellate court recognized <u>Strickland</u> as the legal principal controlling an ineffective assistance of counsel claim. And that court applied that decision correctly to petitioner's claim that trial counsel was ineffective for failing to object to IPI Criminal 3d No. 3.15. Counsel cannot be said to be ineffective for failing to invoke a ruling that was not in effect until after petitioner's conviction was final. Where petitioner has failed to meet the first prong of the <u>Strickland</u> inquiry, it is unnecessary to address the prejudice prong. <u>Montgomery v. Uchtman</u>, 426 F.3d 905, 914 (7th Cir. 2005). Petitioner cannot show that the state court's decision was either "contrary to," or employed an "unreasonable application of" <u>Strickland</u>, or was premised on an unreasonable determination of facts. 28 U.S.C. § 2254(d)(1-2)). *See* <u>United States ex rel. Mercado v. Uchtman</u>, 2005 WL 1785325, * 2 (N.D. Ill. July 20, 2005) (state appellate court's adjudication that error in Illinois pattern jury instruction 3.15 was harmless due to overwhelming evidence of guilt was neither contrary to nor an unreasonable application of Supreme Court precedent).

Further, petitioner cannot show that the state court decision regarding appellate counsel's effectiveness was either "contrary to" or employed and "unreasonable application of" <u>Strickland</u>, or was premised on an unreasonable determination of facts. 28 U.S.C. § 2254(d)(1-2)). Like claims of ineffective assistance of trial counsel, a claim of ineffective assistance of appellate counsel is controlled by the two-part test of <u>Strickland</u>. In the case of appellate counsel, the first prong asks "whether it was within the realm of competent appellate representation to decline to raise a particular point on appeal, considering both the arguments that might be made and the governing standard of review." <u>Howard v. Gramley</u>, 225 F.3d 784, 790 (7th Cir. 2000). The prong asks whether there was a reasonable probability that, but for appellate counsel's errors, petitioner's case would have been

remanded for a new trial, or that the trial court's judgment would have been modified or reversed on appeal.  Id.

The appellate court utilized the approach set forth in Strickland, and found that appellate counsel should have raised the jury instruction on appeal.  However, the court impaled any claim of ineffective assistance on the second prong of the Strickland test.  The state court recognized that the type claim raised by the petitioner here had failed on the merits where the defendant could not show prejudice due to the overwhelming nature of the evidence presented against him.  (Exhibit H at 18, *citing* People v. Smith, 341 Ill.App.3d 530, 794 N.E.2d 367 (1st Dist. 2003)).  The Smith court had concluded that where the evidence was not closely balanced, the record rebutted the presumption that the improper instruction was outcome determinative.  Smith, 341 Ill.App.3d at 547.  So too, the appellate court in this case found that the evidence was overwhelming where a total of five witnesses separately identified petitioner as one of the shooters from a photo array and a lineup, and those identifications all occurred within three days of the crime.  Also, the witnesses testified to substantially the same versions of events leading up to the shooting itself.  And finally the State did not improperly instruct the jury in its closing argument.[1]  Thus, since petitioner could not show that the result of the proceedings would have been different had appellate counsel raised the issue on direct appeal, petitioner's claim must fail.

The appellate court's decision was correct.  Even if the jury should not have been instructed as they were, an error in jury instruction is a "trial error" rather than a "structural error."  California v. Roy, 519 U.S. 2, 5, 117 S.Ct. 337 (1996) (*per curiam*).  Therefore, it is subject to harmless-error

---

[1]  The facts as found by the state court will be more thoroughly set forth in response to petitioner's claim four.

analysis, Id., and the appellate court applied such an analysis in rejecting petitioner's ineffective assistance contention. The state court here found that even absent the instruction, the outcome would not have been different because the evidence of guilt was overwhelming. Any error therefore, did not have a "substantial and injurious effect or influence in determining the jury's verdict " which resulted in "actual prejudice" to the petitioner. Id. See Brecht v. Abrahamson, 507 U.S. 619, 638, 113 S.Ct. 1710 (1993). Therefore, the state court decision regarding ineffective assistance of appellate counsel was neither "contrary to," or employed an "unreasonable application of" Strickland, nor was it premised on an unreasonable determination of facts. 28 U.S.C. § 2254(d)(1-2). Mercado, 2005 WL 1785325 at * 2.

**Claim four - ineffective assistance of trial counsel where counsel failed to interview and call alibi witnesses Jennifer Pinkston, Jeanine Gomolinski, and Abraham Gutierrez.**

Petitioner's next claim is that trial counsel was ineffective because he failed to interview and call alibi witnesses, Jennifer Pinkston, Jeanine Gomolinski, and Abraham Gutierrez. Petitioner raised this claim on direct appeal, and in his PLA. It is therefore properly before this Court. The state appellate court first set forth the facts of this case, and then discussed petitioner's claim:

> The following accounts of incident witnesses were elicited at trial.
>
> Nancy Alvarado testified that about 11 p.m. on June 27, 1997, she was sitting on the porch with Maribel Gutierrez and Juan Carlos Cruz at 2208 North Mobile Avenue in Chicago. Nancy saw three men walking toward the house. One man went between the buildings at 2208 and 2212 North Mobile Avenue. The other two men remained on the sidewalk. Daniel Violante, who had been sitting on the porch next door, walked toward one man, who said, "Disciple Love, Maniac Love." Daniel responded similarly. The man then pulled out a gun, put it to Daniel's head, and said, "D.K. Cobra Love," and fired the gun. Nancy testified that "D.K." meant "Disciple Killer." Daniel ran away, between the houses. The man fired again in Daniel's direction. He then walked back and fired at Juan Carlos, who ran into the house

with Maribel. The man next fired at Jorge Gonzalez. One of the other men also began shooting at Jorge. Nancy then stood up and told the men to stop shooting. The men ran toward Palmer Street. Nancy identified defendant from a photo array and a lineup as one of the shooters. She testified that the first gunman wore blue jeans and a white T-shirt. She also testified that defendant was bald.

Jesus Gonzalez testified that, on the night of the murder, he was on the porch at 2212 North Mobile Avenue, listening to the radio with Jose Gonzalez, Daniel Violante and Jorge Gonzalez. Maribel Gonzalez and Juan Carlos Cruz were next door in front of 2208 North Mobile Avenue. Three men walked toward Jesus and said, "Disciple, Cobra." Defendant stopped in front of 2208 North Mobile Avenue and the other two men approached Daniel in front of 2212 North Mobile Avenue. Daniel said, "Disciple," and one of the men pulled a gun and fired at Daniel. Daniel then jumped the fence and ran away. Jesus then saw defendant point a gun at Jorge. The man who fired at Daniel then shot at Juan Carlos. Jesus went inside the house and then heard six or seven shots. Jesus identified defendant from a photo array and later picked defendant out of a lineup as the person who pointed a gun at Jorge. Jesus testified that he had never seen defendant before the shooting. He described both shooters as bald but could not remember what they were wearing.

Maribel Gutierrez testified that she was on the porch at 2208 North Mobile Avenue with Juan Carlos, while Jesus, Jorge and Daniel were on the porch next door. Jorge came over to change a tape in the tape player. Maribel then saw three men walking toward her house, saying "gang things." One man told Daniel he was a Maniac and Daniel responded that he was a Maniac also. The man then said, "Maniac Killer" and pulled out a gun. Maribel then ran inside the house. She heard more than one shot but could not remember how many. She did not see the shooters' faces and could only describe the gun as shiny.

Juan Carlos Cruz testified that he was on the porch at 2208 with Nancy and Maribel. Jorge walked next door to change the cassette tape and three men approached. Juan Carlos heard them scream, "Disciple Love, Cobra Killer." Daniel walked toward one man and made a Maniac Latin Disciple hand signal. The man then said "Cobra Love" and put a gun to Daniel's head. Defendant pulled out a gun and pointed it at Jorge. Juan Carlos turned around and pushed Maribel into the house. Juan Carlos heard three gunshots as he went

through the door and five more once he was inside. After the shooting stopped, Juan Carlos went outside and found Jorge on the ground with blood covering his face. Juan Carlos then felt a burning sensation in his leg and discovered he had been shot. Doctors removed multiple shot pellets from the back of his waist and leg.

Daniel Violante testified that he was 16 years old and a member of the Maniac Latin Disciples gang at the time of the shooting. As he was sitting on the porch, he saw a purple car drive down Mobile Avenue toward Palmer Street. Five minutes later he saw the car drive by again. He saw three heads inside the car. A few minutes later, Daniel saw three men walk up Mobile Avenue from Palmer Street. Two men stopped in front of 2208, while the third approached 2212 and asked "if they were all gangbangers." The man said, "MLD" and Daniel said he was also an "MLD." The man then said, "Disciple killer, Cobra Love," and pointed a gun at Daniel. Daniel jumped the fence and ran away. When he returned he found Jorge lying in front of 2208, spitting up blood.

Jose Gonzalez testified that he saw a purple car with tinted windows drive by and turn onto Palmer Street. The car drove by a second time and Jose saw a passenger in the back seat staring at the group on the porch. Soon afterward three men ran up Mobile Avenue from Palmer Street, saying, "Maniac, Cobra killer." and making gang hand signals. Defendant stopped near Jorge in front of 2208, and another man approached Daniel, saying, "Maniac, Cobra killer." Jose did not remember Daniel responding. In contrast to Nancy Alvarado, Jose testified that the man pointed a gun at Daniel and pulled the trigger, but the gun did not fire. Daniel jumped over the gate and ran between the houses. Defendant also drew a gun and fired at Jorge, who immediately fell to the ground. Defendant fired several more rounds at Jorge and the first gunman also fired three rounds at Jorge. The men ran away toward Palmer Street.

The following testimony of non-incident witnesses was also elicited. Assistant Cook County Medical Examiner Dr. Nancy Jones testified that Jorge died of multiple shotgun wounds. Jorge's head, upper arm and chest were punctured by shot pellets. The chest wound showed evidence of close-range firing. Jorge also had three bullet wounds in his back and right thigh.

Chicago police officer Joel Bemis testified that, on June 28, 1997, he received an anonymous call implicating defendant and his brother,

Juan Hernandez, in the murder of Jorge Gonzalez. Bemis knew the Hernandez brothers personally and knew they were members of the Insane Spanish Cobras gang. Bemis instructed his partner to compile a photo array including the brothers' pictures and forwarded the photos to Detective Reynaldo Guevara.

Detective Guevara testified that on June 29, 1997, Jesus Gonzalez, Jose Gonzalez and Juan Carlos Cruz separately viewed the photo array. All three identified defendant and Juan Hernandez as the shooters. On June 30, 1997, Guevara showed the same photo array to Nancy Alvarado. She positively identified defendant as the man who shot Jorge. She also selected the photo of Juan Hernandez as the other shooter, but she was not certain of that identification. Daniel Violante identified Juan Hernandez as the man who shot at him, and defendant as the man who stood near Jorge. Jesus, Jose, Juan Carlos, Nancy and Daniel all positively identified defendant in a lineup. All but Nancy positively identified Juan Hernandez in a lineup.

Carlos Moises Lopez testified that he had known defendant for 10 years. Both were members of the Fullerton and Tripp section of the Insane Spanish Cobras. Lopez said he joined the gang when he was 11 years old, but quit after being shot in the leg. He could not remember when he was shot. Lopez denied being the governor of the Fullerton and Tripp section. He testified in June 1997 the governor was "a guy named Frank."

Lopez said he arrived at Craft Bowl between 8 and 9 p.m. on June 27, 1997. He saw Luis Torres and defendant there. Lopez bowled with defendant until those under 21 were required to leave. He and defendant then walked to a nearby bar where Lopez' mother worked. Lopez took his mother's car and drove defendant home about 12:30 a.m.

Valerie Pinkston testified that she was working as a counter attendant at Craft Bowl on June 27, 1997. Defendant arrived at the bowling alley about 9 p.m. and bowled with Valerie's younger sister Jennifer and Carlos Lopez until midnight. Pinkston testified that in June 1997 she knew defendant only as a customer at the bowling alley, but after his arrest she visited him in jail.

Defendant testified that in June 1997 he was a member of the Fullerton and Tripp section of the Spanish Cobras. Defendant stated that he did not hold a rank in the gang and that his only role was to

"go to parties, hang out together, wear the colors." Defendant knew that in June 1997 the Spanish Cobras and the Maniac Latin Disciples were at "war" with each other.

Defendant further testified that he arrived at Craft Bowl between 7:30 and 8 p.m. on June 27, 1997. He played pool with Luis Torres until Carlos Lopez arrived. Defendant, Lopez and Jennifer Pinkston bowled together until about midnight. Lopez then drove defendant home. Defendant did not hear about the shooting until he and his brother turned themselves in at the 25th District police station.

Officer Steven Sesso testified for the State in rebuttal. Sesso is a gang crimes specialist in the 25th District. He testified that he gathered gang information through personal encounters with gang members and conversations with police officers, public officials and members of the community. Sesso testified that, in June 1997, defendant held the rank of "second seat" in the Fullerton and Tripp section of the Spanish Cobras. Juan Hernandez held the rank of "first seat" and Carlos Moises Lopez was "governor" of the section. Two or three months before defendant's trial, Sesso saw Lopez at the 25th District police station, posting bond for another Spanish Cobra.

After defendant was found guilty of all charges, he filed posttrial motions alleging that his trial counsel was ineffective for failing to call one alibi witness and failing to properly investigate another. The State called defendant's trial counsel. Defense counsel testified that he did not call Jennifer Pinkston as an alibi witness because she was unable to verify defendant's whereabouts at the time of the murder. Defense counsel also testified that he received information that Jeanine Gomolinski was antagonistic to defendant and would have damaged the credibility of Valerie Pinkston by testifying that Valerie and Juan Hernandez had a romantic relationship. Defense counsel did not interview Gomolinski himself but reviewed a State investigator's interview and received information from Juan Hernandez.

\* \* \*

Defendant first argues that his trial counsel was ineffective for failing to properly investigate or present additional alibi witnesses. To prove ineffective assistance of counsel, a defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) counsel's mistakes were so serious that they deprived the defendant of a fair trial. Strickland v. Washington, 466

U.S. 668, 698, 104 S.Ct. 2053 (1984); People v. Albanese, 104 Ill.2d 504, 525, 473 N.E.2d 1246 (1984). We indulge a "strong presumption that the challenged action of counsel was the product of sound trial strategy and not of incompetence." People v. Barrow, 133 Ill.2d 226, 247, 549 N.E.2d 240 (1989). The decision to call a particular witness is a matter of trial strategy. People v. Flores, 128 Ill.2d 66, 85-86, 538 N.E.2d 481 (1989).

Here, defense counsel called three alibi witnesses who testified that defendant was at Craft Bowl at the time of the shootings: Luis Torres, Carlos Moises Lopez and Valerie Pinkston. Defendant argues that counsel failed to investigate or call Jennifer Pinkston and Jeanine Gomolinski, both of whom could have provided the same alibi but whose credibility would not be compromised by gang membership. But defense counsel testified at the posttrial hearing that he spoke to Jennifer Pinkston before trial and discovered that she could not account for defendant's whereabouts after 9 p.m. on June 27, 1997. He testified that Jennifer's posttrial affidavit claiming she was with defendant at the time of the shooting did not match the information she gave defense counsel before trial.

Defense counsel also testified that he learned from a State investigator who had interviewed Jeanine Gomolinski that "[Gomolinski] was hostile to both Rosendo Hernandez and his brother, Juan, because of run-ins they had in connection with gang involvement, gang signs, prior police involvement." Defense counsel also believed Gomolinski would testify to a romantic relationship between Valerie Pinkston and Juan Hernandez. Defense counsel testified that he did not want to damage the credibility of Valerie Pinkston because she was a strong witness for defendant.

Defendant contends that, "had the defense relied on [them], the outcome of the trial could certainly have been different." The reasonableness of counsel's representation must be evaluated not through the benefit of hindsight, but in light of the circumstances known to him at the time. People v. Faulkner, 292 Ill.App.3d 391, 394, 686 N.E.2d 379 (1997). We agree with the trial court that additional alibi witnesses "would merely have been accumulative evidence" and the outcome of the trial would not have been different. Five witnesses identified defendant in both a photo array and a lineup. Though defendant points to discrepancies in their descriptions of the shooting, the record shows those discrepancies were minor. Minor testimonial discrepancies do not destroy a witness' credibility, but

only affect the weight to be afforded his testimony. People v. Tirando, 254 Ill.App.3d 497, 513, 626 N.E.2d 1114 (1993).

Defendant further contends that defense counsel was ineffective for failing to interview Abraham Guitierrez. Trial counsel is not ineffective for failing to interview a potential witness where defendant can point to no favorable testimony the witness might offer. People v. Williams, 147 Ill.2d 173, 245, 588 N.E.2d 983 (1991), citing People v. Greer, 79 Ill.2d 103, 123, 402 N.E.2d 203 (1980). Gutierrez' posttrial affidavit claims that he did not know anything about the shooting, but that he implicated defendant and Juan Hernandez to win his own release from police custody. Defendant claims that Guitierrez' testimony would have contradicted Officer Bemis' testimony that he received an anonymous call implicating defendant. We disagree. There was no testimony at trial that police relied on Gutierrez' information or that Gutierrez made the anonymous call. Nor would the outcome of the trial have been different with Gutierrez' testimony where five eyewitnesses identified defendant as one of the shooters.

(Exhibit D, at 2-9). The state court correctly identified Strickland as the relevant United States Supreme Court precedent in deciding an ineffective assistance of counsel claim, and reasonably applied it to this case. A decision to call witnesses is a matter of trial strategy that should not be second-guessed by the courts. Strickland, 466 U.S. at 690-91; Weber v. Israel, 730 F.2d 499, 508 n.7 (7th Cir. 1984) (the decision regarding which witnesses to call is a tactical one within the province of the lawyer after consultation with the client).

Here, counsel explained why he did not call certain witnesses. Jennifer Pinkston told counsel prior to trial that she could not account for petitioner's whereabouts at the time of the shooting. And Jeanine Gomolinski would not be favorable to petitioner, and could have damaged the credibility of a strong defense witness, Valerie Pinkston. Even if the additional witness would have been favorable to petitioner, the appellate court added that they would have been cumulative at best, since defense counsel called three alibi witnesses for petitioner. See United States ex rel. Searcy v. Greer,

768 F.2d 906, 913 (7th Cir. 1985) (since defendant's alibi was corroborated by his mother, no error to deny a continuance to allow time to bring in other witnesses to provide cumulative evidence). The decision not to call these witness was not ineffectiveness but rather "virtually unchallengeable" trial strategy. *See* <u>Strickland</u>, 466 U.S. at 690-91. At a minimum, the appellate court's adjudication does not run afoul of the AEDPA's standard of review.

And, while failure to investigate can sometimes be so egregious as to support an ineffective assistance of counsel claim, *See* <u>United States v. Gray</u>, 878 F.2d 702, 711-12 (3rd Cir.1989), defense counsel need not "track down every lead or . . . personally investigate every evidentiary possibility before choosing a defense and developing it." <u>Sullivan v. Fairman</u>, 819 F.2d 1382, 1392 (7th Cir.1987). Acts or omissions that may be classified as trial tactics cannot be considered by the court in an ineffective assistance of counsel claim. <u>United States v. Williams</u>, 106 F.3d 1362, 1367 (7th Cir.1997) (ruling that the <u>Strickland</u> test is "highly deferential" to counsel, "presuming reasonable judgment and declining to second guess strategic choices"). The state appellate court here found that petitioner's claim that counsel was ineffective for failing to interview Abraham Gutierrez lacked substance for two reasons. First, Gutierrez's post-trial affidavit asserted that he was the anonymous tipster implication petitioner in the murder and his testimony would have contradicted police testimony regarding the tip. But as the appellate court held, there was no evidence that the police relied on the tip or that Gutierrez made the anonymous call. Second, the appellate court held that even if Gutierrez had been called to testify, based on his affidavit, the outcome would not have been different, given the weight of the evidence against petitioner, and the fact that Gutierrez' testimony would have added nothing to the case. The Illinois Appellate Court did not unreasonably apply <u>Strickland</u> to petitioner's claim where petitioner could not prove prejudice, in light of the State's

overwhelming evidence against him, the absence of proof that the police relied on the tip or that Gutierrez was the tipster. Therefore, the state court decision regarding ineffective assistance of counsel was neither "contrary to," or employed an "unreasonable application of" Strickland, nor was it premised on an unreasonable determination of facts. 28 U.S.C. § 2254(d)(1-2).

**Claim five - the police arrested petitioner without probable cause.**

Petitioner's fifth claim is that the police arrested petitioner without probable cause. This claim was not raised in the state court, and is therefore procedurally defaulted. Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991). Petitioner asserts no cause and prejudice which would excuse his default, in light of the overwhelming proof of his guilt, he cannot demonstrate a miscarriage of justice.[2]

This claim is also not cognizable under principles articulated in Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037 (1976). This claim asserts a Fourth Amendment violation. However, such a claim is not cognizable in this habeas corpus proceeding. Stone, 428 U.S. at 494. See Cabrera v. Hinsley, 324 F.2d 527, 530 (7th Cir. 2003) (once state court provides a mechanism which is not a sham to litigate a Fourth Amendment claim, issue is not cognizable in collateral federal proceeding).

Prior to trial, petitioner never moved to quash his arrest despite the availability of Illinois'

---

[2]   In his petition petitioner attempts to establish cause for some of his defaults by asserting that post-conviction appellate counsel was ineffective and acting under a conflict of interest when counsel failed to raise petitioner's post-conviction claims on appeal and in his PLA. (Petition at 6(a)). However, that contention would not apply to this claim as this claim was not even raised in the post-conviction petition. And, petitioner does not make any allegations sufficient to excuse his default under the miscarriage of justice exception, because petitioner does not support his allegations of constitutional error with new reliable evidence that was not presented at trial nor show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Schlup, 513 U.S. at 327. See House v. Bell, Doc. No. 04-8990 (June 12, 2006).

time - tested procedures for raising a Fourth Amendment claim. Thus, at this point when he was required to do so, petitioner failed to fulfill the first predicate for being allowed to overcome Stone's bar: he did not:

> clearly inform[ ] the state court of the factual basis for ... [his] claim and ... argue[ ] that those facts constitute a violation of ... [his] fourth amendment rights ..." [Weber v. Murphy, 15 F.3d 691, 694 (7th Cir.), *cert denied*, 511 U.S. 1097, 114 S.Ct. 1865 (1994)] (*quoting* Pierson v. O'Leary, 959 F.2d 1385, 1391 (7th Cir.), *cert denied*, 506 U.S. 857, 113 S.Ct. 168 (1992)).

> Turentine v. Miller, 80 F.3d 222, 224 (7th Cir.), *cert denied*, 519 U.S. 968, 117 S.Ct. 394 (1996).

In short, consideration of this claim is precluded in the Court by Stone v. Powell.

## Claim six - trial counsel was ineffective for failing to make a motion to quash petitioner's arrest.

Petitioner's sixth claim is that trial counsel was ineffective where counsel failed to make a motion to quash petitioner's arrest. Again, like petitioner's first claim, petitioner raised this claim in his post-conviction petition but did not raise it on appeal or in his PLA. It is therefore procedurally defaulted. Boerckel, 526 U.S. at 845.

And, again, while petitioner attempts to establish cause by asserting that post-conviction appellate counsel was ineffective and acting under a conflict of interest when he abandoned petitioner's post-conviction claims on appeal and in his PLA, (Petition at 6(a)), such a claim is not cognizable in habeas proceedings. *See* 28 U.S.C. § 2254(i).

And petitioner again cannot show a miscarriage of justice, since the proof of his guilt was overwhelming and petitioner has not supported his allegations of constitutional error with new

reliable evidence that was not presented at trial, nor has he shown that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Schlup, 513 U.S. at 327. There is no excuse for the default.

This claim is procedurally defaulted for a second reason: the trial court found that petitioner had waived the claim that defense counsel was ineffective for failing to file pretrial motions challenging the legality of his arrest. (*See* Exhibit H at B-2).[3] That is an independent and adequate state ground barring consideration of the claim. Fernandez v. Sternes, 227 F.3d 977, 981 (7th Cir. 2000).

**Claim seven - trial counsel was ineffective for failing to make a motion to suppress the lineup identification based on suggestiveness.**

Petitioner's seventh claim is that trial counsel was ineffective for failing to make a motion to suppress the lineup identification based on suggestiveness. Again, petitioner raised this claim in his post-conviction petition but did not raise it on appeal or in his PLA. It is therefore procedurally defaulted. Boerckel, 526 U.S. at 845.

And, again, while petitioner attempts to establish cause by asserting that post-conviction appellate counsel was ineffective and acting under a conflict of interest when he abandoned petitioner's post-conviction claims on appeal and in his PLA, (Petition at 6(a)), such a claim is not cognizable in habeas proceedings. *See* 28 U.S.C. § 2254(i).

---

[3] The trial court generally found that many of petitioner's claims of ineffectiveness were "barred by the doctrine of waiver, others are barred by the doctrine of *res judicata* and any remaining claims are belied by the record." (Exhibit H at B-2). That court only specifically addressed a few of petitioner's claims. As such, respondent will set forth the trial court's findings only when that court specifically identifies and addresses a claim. Illinois courts interchangeably use the words waiver and forfeiture. People v. Blair, 215 Ill.2d 427, 831 N.E.2d 604 (2005).

And petitioner again cannot show a miscarriage of justice, since the proof of his guilt was overwhelming and petitioner has not supported his allegations of constitutional error with new reliable evidence that was not presented at trial, nor has he shown that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Schlup, 513 U.S. at 327. There is no excuse for the default.[4]

**Claim eight - direct appellate counsel was ineffective for failing to raise the issue of trial counsel's incompetence for failing to move to quash petitioner's arrest and suppress the lineup identification.**

Petitioner's eighth claim is that direct appellate counsel was ineffective for failing to raise the issue of trial counsel's incompetence for failing to move to quash petitioner's arrest and suppress the lineup identification based on suggestiveness. Petitioner raised this claim in his post-conviction petition but abandoned it on appeal and in his PLA. It is procedurally defaulted. Boerckel, 526 U.S. at 845. And for the reasons set forth previously, petitioner has not established cause and prejudice to excuse the default.

**Claim nine - trial counsel was ineffective for failing to call an expert witness to testify about the unreliability of eyewitness identification.**

---

[4] The trial court also found that petitioner's claim that defense counsel failed to file a motion to suppress lineup identification was belied by the record; on November 25, 1997, defense counsel filed a joint motion to quash lineup identifications. (Exhibit H at B-2). However, petitioner's claim here is that counsel was ineffective for failing to file a motion to quash the lineup identification based on suggestiveness. That was the same claim presented in petitioner's post-conviction petition, where petitioner acknowledged counsel's motion to quash the lineup based on the fact that petitioner's attorney was not allowed to participate. *See* Exhibit O, motion to suppress lineup. However, petitioner alleges that an additional basis for that suppression should have been raised: that the lineup was suggestive. Counsel apparently did not file a motion to suppress identification on that basis. But as set forth above, the claim is defaulted.

Petitioner's eighth claim is that trial counsel was ineffective for failing to call an expert witness to testify about the unreliability of eyewitness identification. Again, petitioner raised this claim in his post-conviction petition but abandoned it on appeal. It further was not raised in the ensuing PLA, and is therefore procedurally defaulted. Boerckel, 526 U.S. at 845. And, as set forth above, petitioner has not established cause and prejudice or a miscarriage of justice to overcome the default.

In any event, the trial court found that petitioner had failed to overcome the presumption that counsel's actions were the product of sound trial strategy and not of incompetence. (Exhibit H at B-2). Petitioner cannot show that decision was either "contrary to," or employed an "unreasonable application of" Strickland, or was premised on an unreasonable determination of facts. 28 U.S.C. § 2254(d)(1-2). See Hill v. United States, 2001 WL 185474 * 2, 4 (N.D. Ill. 2001) (rejecting claim that attorney was ineffective for failing to call an expert witness on identification) see also United States v. Hall, 165 F.3d 1095, 1104-1105 (7th Cir. 1999) (collecting cases).

**Claim ten - direct appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for failing to call an expert witness to testify about the unreliability of eyewitness identification.**

Petitioner's tenth claim is that his direct appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for failing to call an expert witness to testify about the unreliability of eyewitness identification. Again, this claim was raised in the post-conviction petition, and abandoned on appeal and in petitioner's PLA. It is therefore procedurally defaulted. Boerckel, 526 U.S. at 845. As set forth above, petitioner has not established any excuse for this procedural default.

**Claim eleven - ineffective assistance of trial counsel for failing to conduct a meaningful pre-trial investigation of the case**, and

**Claim twelve - ineffective assistance of direct appellate counsel for failing to raise trial counsel's ineffectiveness for failing to conduct a meaningful pre-trial investigation of the case.**

Petitioner's eleventh claim is that trial counsel was ineffective for failing to conduct a meaningful pretrial investigation of the case. Specifically, petitioner contends that, had counsel conducted such an investigation, he would have learned a wealth of information about the underhanded techniques of Detective Guevera. His twelfth claim is that direct appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to conduct a meaningful pre-trial investigation of the case. Petitioner raised those claims in his post-conviction petition. He did not raise them on appeal or in his ensuing PLA, and has therefore procedurally defaulted them. <u>Boerckel</u>, 526 U.S. at 845. As set forth previously, petitioner does not establish cause and prejudice or a miscarriage of justice sufficient to overcome the default.

**Claim thirteen - trial counsel was ineffective for failing to file a motion *in limine* seeking to prohibit the State from mentioning petitioner's co-defendant**, and

**Claim fourteen - ineffective assistance of appellate counsel for failing to raise the issue of trial counsel's incompetence for failing to file a motion *in limine* seeking to prohibit the State from mentioning co-defendant's name.**

Petitioner raised these claims in his post-conviction petition, but not on appeal or in his PLA. They are therefore procedurally defaulted. <u>Boerckel</u>, 526 U.S. at 845. As set forth above, petitioner does not establish cause and prejudice or a miscarriage of justice sufficient to overcome the default.

**Claim fifteen - trial counsel was ineffective for allowing the police to question petitioner when counsel did not know the facts of the case**, and

**Claim sixteen - appellate counsel was ineffective for failing to raise the issue of trial counsel's incompetence for allowing the police to question petitioner without knowing the facts of the case.**

Petitioner raised these claims in his post-conviction petition, but not on appeal or in his PLA. They are therefore procedurally defaulted. <u>Boerckel</u>, 526 U.S. at 845. And as set forth above, petitioner does not establish cause and prejudice or a miscarriage of justice sufficient to overcome the default.

**Claim seventeen - trial counsel was ineffective for failing to call an expert gang witness.**

Petitioner's seventeenth claim is that trial counsel was ineffective for failing to call an expert gang witness. This claim was raised in petitioner's post-conviction petition, but not raised on appeal or in petitioner's PLA. It is therefore procedurally defaulted. <u>Boerckel</u>, 526 U.S. at 845. And as set forth above, petitioner does not establish any excuse to overcome the default.

In any event, the trial court specifically addressed this issue, and held that petitioner had not overcome the presumption that counsel's actions were the product of sound legal strategy, and not of incompetence. (Exhibit H at B-8). Precedent teaches that courts generally should be loathe to question counsel's choices regarding what witnesses to call at trial, *see*, *e.g.*, <u>Strickland</u>, 466 U.S. at 689, and precedent articulates this directive even more forcefully in the context of federal habeas review. *See*, *e.g.* <u>Murrell v. Frank</u>, 332 F.3d 1102, 1111-12 (7th Cir. 2003). Petitioner cannot show the state trial court's decision was either "contrary to," or employed an "unreasonable application of" <u>Strickland</u>, or was premised on an unreasonable determination of facts. 28 U.S.C. § 2254(d)(1-2). An expert on gangs might only have reminded the jurors of petitioner's affiliation with his gang and the apparent motive for the murder.

**Claim eighteen - the cumulative effect of trial counsel's errors warrants relief.**

Petitioner's eighteenth claim is that the cumulative effect of trial counsel's errors warrants relief. Petitioner raised this claim in his post-conviction petition, but not on appeal or in his PLA. It is therefore procedurally defaulted. <u>Boerckel</u>, 526 U.S. at 845. And as set forth above, petitioner does not establish any excuse to overcome the default.

**Claim nineteen - direct appellate counsel was ineffective because he was laboring under a conflict of interest.**

Petitioner's nineteenth claim is that direct appellate counsel was ineffective because he was laboring under a conflict of interest. Petitioner raised this claim in his post-conviction petition, but not on appeal or in his PLA. It is therefore procedurally defaulted. <u>Boerckel</u>, 526 U.S. at 845. And as set forth above, petitioner does not establish cause and prejudice or a miscarriage of justice sufficient to overcome the default.

Furthermore, the trial court specifically addressed this issue in its order denying petitioner's post-conviction petition. The court recognized that claims of ineffective assistance of appellate counsel are evaluated under the two-part test set forth in <u>Strickland</u>. (Exhibit H at B-9). The court also recognized that appellate counsel is not required to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. (Exhibit H at B-9). Specifically, the trial court stated:

> Petitioner asserts that appellate counsel previously worked as an Assistant State's Attorney who worked closely with Detective Guevara. Petitioner concludes that this "relationship and friendship" prevented appellate counsel from being a zealous advocate for

Petitioner. Petitioner's conflict of interest claim is totally lacking in merit. Appellate counsel raised meritorious claims on direct appeal and provided zealous advocacy.

(Exhibit H at B-9). The court found that petitioner's claim had absolutely no merit. Petitioner cannot show the state trial court's decision was either "contrary to," or employed an "unreasonable application of" Strickland, or was premised on an unreasonable determination of facts. 28 U.S.C. § 2254(d)(1-2). Petitioner failed to establish how appellate counsel was ineffective or which of the claims omitted on appeal would have been successful had they been raised.

**Claim twenty - direct appellate counsel was ineffective for failing to raise instances of trial counsel's incompetence.**

Petitioner's twentieth claim is that direct appellate counsel was ineffective for failing to raise instances of trial counsel's incompetence. This claim too was raised in petitioner's post-conviction petition, but procedurally defaulted by petitioner's failure to raise it on appeal or in his PLA. Boerckel, 526 U.S. at 845. And as set forth above, petitioner has not established any excuse to overcome the default.

In any event, the state trial court found:

> Where a Petitioner claims that appellate counsel was deficient for failing to raise the issue of trial counsel's ineffectiveness, the focus must be on trial counsel's performance. People v. Guest, 166 Ill.2d 381, 390, 655 N.E.2d 873, 877 (1995). As discussed *supra*, trial counsel did not render ineffective assistance. Thus, it cannot be said that appellate counsel's decision not to raise a claim of ineffective assistance of trial counsel is meritorious. Petitioner's underlying claim of ineffectiveness lacks support. Therefore, Petitioner's claim of ineffective assistance of appellate counsel is without merit. People v. Zambrano, 266 Ill.App.3d 856, 865, 640 N.E.2d 1334, 1341 (1st Dist. 1994).

(Exhibit H at B-9).  Appellate counsel cannot be ineffective for failing to raise a meritless claim.

Lilly v. Gilmore, 988 F.2d 783, 786 (7th Cir. 1993).  Thus, petitioner cannot show the state trial

court's decision was either "contrary to," or employed an "unreasonable application of" Strickland,

or was premised on an unreasonable determination of facts.  28 U.S.C. § 2254(d)(1-2).

**Claim twenty one - trial counsel was ineffective for failing to object to in-court and out-of court identifications**, **and**

**Claim twenty-two - ineffective assistance of appellate counsel for failing to raise the ineffective assistance of trial counsel for failing to object to identifications.**

Petitioner's twenty first claim is that trial counsel was ineffective for failing to object to in-

court and out-of court identifications as unduly suggestive since the witnesses were shown a mug

"photo book" that contained his picture, and his twenty second claim is that appellate counsel was

ineffective for failing to raise trial counsel's incompetence on appeal.  These claims were raised in

petitioner's post-conviction petition, but procedurally defaulted by petitioner's failure to raise it on

appeal or in his PLA.  Boerckel, 526 U.S. at 845.  And as set forth above, petitioner does not

establish cause and prejudice or a miscarriage of justice sufficient to overcome the default.

**Claim twenty-three - trial counsel was ineffective for failing to locate, interview and call witnesses the could have been favorable to petitioner; namely Hector Vasquez, Nicole Nathaniel, Maria Gutierrez, and Elbia Gutierrez**, **and**

**Claim twenty-four - appellate counsel was ineffective for failing to raise the issue of trial counsel's incompetence for failing to locate, interview and call witnesses.**

Petitioner's twenty-third claim is that trial counsel was ineffective for failing to locate,

interview and call witnesses the could have been favorable to petitioner; namely Hector Vasquez,

Nicole Nathaniel, Maria Gutierrez, and Elbia Gutierrez, and his twenty fourth claim is that appellate

counsel was ineffective for failing to raise this issue on appeal. These claims was raised in petitioner's post-conviction petition, but procedurally defaulted by petitioner's failure to raise them on appeal or in his PLA. <u>Boerckel</u>, 526 U.S. at 845. And as set forth above, there is no excuse for petitioner's procedural default.

**<u>Claim twenty-five - trial counsel was ineffective for failing to mount sufficient attacks on the State's witnesses</u>, and**

**<u>Claim twenty-six - appellate counsel was ineffective for failing to raise the effective assistance of trial counsel for failing to mount sufficient attacks on the State's witnesses.</u>**

Petitioner's twenty-fifth claim is that trial counsel was ineffective for failing to mount sufficient attacks on the State's witnesses, and his twenty sixth claim is that appellate counsel was ineffective for failing to raise the effective assistance of counsel in direct appeal. Petitioner never specifically raised these claims anywhere in the State court, and therefore they are procedurally defaulted. <u>Farrell v. Lane</u>, 939 F.2d 409, 410 (7th Cir. 1991). To the extent this claim is encompassed in some of petitioner's other claims that were raised in his post-conviction petition, *i.e.*, that the identifications should have been challenged, as set forth above, those claims too were procedurally defaulted when petitioner failed to raise them on appeal or in his PLA. <u>Boerckel</u>, 526 U.S. at 845. Petitioner cannot avoid their default by realleging them as part of another claim.

**<u>Claim twenty-seven - ineffective assistance of trial counsel for failing to subpoena the police mug books of the Spanish Cobra Street gang</u>, and**

**<u>Claim twenty-eight - ineffective assistance of appellate counsel for failing to raise the issue of ineffective assistance of trial counsel for failing to subpoena the police mug books of the Spanish Cobra Street gang.</u>**

Petitioner's twenty-seventh claim is that trial counsel was ineffective for failing to subpoena the police mug books of the Spanish Cobra Street gang. His twenty-eighth claim is that appellate counsel was ineffective for failing to raise the issue on appeal. These claims were presented in the post-conviction petition, but procedurally defaulted when petitioner failed to raise them on appeal or in his PLA. Boerckel, 526 U.S. at 845. And as set forth above, petitioner does not establish cause and prejudice or a miscarriage of justice sufficient to overcome the default.

**Claim twenty-nine - the cumulative effects of the constitutional violations warrants relief.**

Petitioner's twenty-ninth claim is that the cumulative effects of the constitutional violations warrants relief. This claim was presented in the post-conviction petition, but procedurally defaulted when petitioner failed to raise it on appeal or in his PLA. Boerckel, 526 U.S. at 845. And as set forth above, petitioner does not establish cause and prejudice or a miscarriage of justice sufficient to overcome the default.

In any event, while a habeas petitioner can establish ineffective assistance of counsel by showing that "the cumulative effect of counsel's individual acts or omissions was substantial enough to meet Strickland's test," Williams v. Washington, 59 F.3d 673, 682 (7th Cir. 1995)), when the ineffective assistance claims are either procedurally defaulted or without merit, there are no errors to accumulate. United States ex rel. Easley v. Hinsley, 305 F.Supp.2d 867, 886 (N.D. Ill. 2004). This Court, should therefore deny petitioner's cumulative effect claim. See id.

## CONCLUSION

WHEREFORE, based on the foregoing, respondent respectfully requests that this Court deny the Petition for Writ of Habeas Corpus, as the claims are either without merit, non-cognizable or procedurally defaulted. If this Court finds that any of the claims respondent asserts are procedurally defaulted or non-cognizable are properly before this Court, and have not been addressed on the merits, respondent requests additional time to address them in a subsequent filing.

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

BY:    /s Colleen M. Griffin
COLLEEN M. GRIFFIN
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
(312) 814-4684
cgriffin@atg.state.il.us
Reg. Number 6198598

**IN THE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES ex rel.** | ) | |
| **ROSENDO HERNANDEZ,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **06-2183** |
| | ) | |
| **DON HULICK, Warden,** | ) | **The Honorable** |
| **Respondent.** | ) | **Elaine E. Bucklo,** |
| | ) | **Judge Presiding.** |

Certificate of Service

I hereby certify that on June 27, 2006, I electronically filed an Answer with the Clerk of Court using the CM/ECF system and I hereby certify that on June 27, 2006, I mailed by United States Postal Service, the document to the following non registered participant:

Rosendo Hernandez, #K-81460
Menard Correctional Center
711 Kaskaskia Street
P.O. Box 711
Menard, Illinois 62259

By:     s/Colleen M. Griffin
COLLEEN M. GRIFFIN
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
(312) 814-4684