**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**



| | |
|---|---|
| **ROSENDO HERNANDEZ,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) ₁No. 06 C 2183 |
| | ) |
| **DON HULICK,** | ) |
| | ) |
| Respondent. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Rosendo Hernandez has brought a petition pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. Hernandez is currently in the custody of the State of Illinois Department of Corrections, incarcerated at the Menard Correctional Center. For the reasons stated herein, I deny his petition.

I.

In 1999, petitioner was convicted by a jury of first degree murder, attempted murder, and aggravated battery with a firearm. Hernandez was ordered to serve a total of 80 years in the Illinois Department of Corrections. He was sentenced to 55 years imprisonment for the murder of Jorge Gonzalez, 25 years for attempted murder of Juan Carlos Cruz, the sentences to run consecutively, and 20 years imprisonment for aggravated battery with a firearm, to run concurrently.

At trial, the evidence against Hernandez consisted primarily of eyewitness testimony, which placed him along with two other

perpetrators at the scene, pointing a gun at Jorge Gonzalez. Two eyewitnesses testified they saw Hernandez shoot Gonzalez. Within days of the shooting, five witnesses present at the scene identified Hernandez from a photo-lineup as well as a traditional lineup. These witnesses also revealed this to be a gang-related killing, because the perpetrators involved exchanged words with the victims. Before shots rang, witnesses heard at least one of the perpetrators say things such as "Disciple Killer" and "Cobra Love," and flash gang hand signals. At the time, the "Spanish Cobras" and the "Maniac Latin Disciples" were rival gangs in conflict with each other.

Hernandez testified in his own defense, claiming an alibi as he was at a bowling alley the night of the shooting. He also testified that at the time of the murder he was a member of the Spanish Cobras, but that he did not hold rank in the gang or engage in the shooting. The defense also called Luis Torres, Carlos Moises Lopez, and Valerie Pinkston, who testified they saw petitioner at the bowling alley at the time of the shooting. Torres and Lopez testified they were former members of the Spanish Cobras and were childhood friends of Hernandez. They gave conflicting testimony about whether Lopez had ever been a high ranking gang member and whether he held the title of "governor" within the gang. Valerie Pinkston testified she was working at the bowling alley on the night of the murder and did not know Hernandez

2

socially. On cross-examination, however, she admitted to visiting petitioner's brother and co-defendant, Juan Hernandez, in the Cook County jail on several occasions, as well as attending court with petitioner's family. She also denied having dated Juan Hernandez. In their rebuttal case, the State called Officer Steven Sesso, a gang crime specialist, who testified he was familiar with the Spanish Cobras and that Hernandez held the rank of "second seat" in that gang at the time of the shooting.

After his conviction, petitioner initiated a lengthy appeals process, which would continue into post-conviction proceedings in the Illinois courts. Every step of this process is important in determining the viability of Hernandez's claims under § 2254 and I examine it in detail. With the assistance of counsel, Hernandez filed a direct appeal arguing (1) ineffective assistance of counsel, when his attorney failed to present exculpatory alibi witnesses that were never investigated or interviewed; (2) denial of his Sixth Amendment right to an impartial jury, because his attorney failed to investigate potential bias against gangs among prospective jurors; (3) error by the trial court in admitting evidence of gang affiliation and rank of petitioner and other defense witnesses; and (4) that the sentence imposed was excessive and in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The appellate court rejected Hernandez's arguments and affirmed his conviction and sentence. *People v. Hernandez*, No. 1-00-1916, slip

op. at 14 (Ill. App. Ct. July 30, 2002). Hernandez subsequently filed a *pro se* petition for leave to appeal to the Illinois Supreme Court, raising the same four arguments presented to the appellate court. On December 5, 2002, the Illinois Supreme Court denied that petition. *People v. Hernandez*, 202 Ill. 2d 633, 787 N.E.2d 162 (Ill. 2002).

Following the conclusion of his direct appeal process, Hernandez filed a *pro se* post-conviction petition raising a total of 15 claims. He argued ineffective assistance of trial counsel because his attorney (1) failed to object to IPI Criminal 3d No. 3.15, an instruction concerning the weight to be accorded to identification testimony; (2) failed to file a pre-trial motion challenging his arrest; (3) failed to procure an expert witness on the unreliability of eyewitness identification; (4) failed to file a motion to suppress both the out-of-court line-up identification and the in-court identification of Hernandez; (5) failed to conduct a meaningful pretrial investigation of the case; (6) failed to file a motion to suppress the lineup identification based upon a lack of probable cause to arrest; (7) failed to locate, interview or call witnesses that could have provided favorable testimony for the defense; (8) failed to file a motion *in limine* to prohibit the prosecution from mentioning the name of Hernandez's co-defendant, and from introducing evidence or testimony concerning petitioner's co-defendant; (9) without knowing the underlying facts of the

4

shooting, allowed the police to question Hernandez; (10) failed to subpoena the police photo-book of members of the Spanish Cobra Street gang; (11) failed to procure an expert witness on gangs; and (12) ineffective assistance of trial counsel, as a result of the cumulative effect of claims 1-11. Hernandez further argued ineffective assistance of counsel on direct appeal when his attorney (13) failed to raise a "reasonable doubt" issue on direct appeal; (14) labored under a conflict of interest in representing him on direct appeal; and (15) failed to raise trial counsel's pervasive ineffectiveness on direct appeal. Hernandez did not attach any supporting "affidavits, records or other evidence" to his petition, as required under 725 ILCS 5/122-1 (2000), or explain the absence of such documentation in the petition. The circuit court dismissed his petition as "frivolous and patently without merit." *People v. Hernandez*, No. 97 CR 21329-02, slip op. at B-14 (Cook Co. Cir. Ct. Aug. 8, 2003).

With assistance of counsel, Hernandez appealed the dismissal of his state petition arguing (1) the circuit court erroneously applied a harmless error analysis in the first stage of post-conviction proceedings regarding the jury instruction claim; and (2) the consecutive sentences were improper. The appellate court affirmed the circuit court's dismissal of Hernandez's petition. *People v. Hernandez*, No. 1-04-0533, slip op. at 12 (Ill. App. Ct. June 30, 2005). Next, Hernandez, still with counsel, filed a

5

petition for leave to appeal to the Illinois Supreme Court on the same two grounds raised before the appellate court. This was also denied. *People v. Hernandez*, 217 Ill. 2d 578, 844 N.E.2d 42 (Ill. 2005).

This brings me to Hernandez's present *pro se* § 2254 petition.[1] In this petition, he raises the following 29 claims: (1) ineffective assistance of appellate counsel on direct appeal, because his attorney failed to raise "the constitutional claim of petitioner not being proven guilty beyond a reasonable doubt"; (2) ineffective assistance of trial counsel, for failure to object to IPI Criminal 3d No. 3.15; (3) ineffective assistance of appellate counsel on direct appeal for failure to challenge trial counsel's ineffectiveness concerning IPI Criminal 3d No. 3.15; (4) ineffective assistance of trial counsel when his attorney failed to interview and call alibi witnesses Jennifer Pinkston, Jeanine Gomolinski and Abraham Gutierrez; (5) he was arrested without probable cause; (6) ineffective assistance of trial counsel when his attorney failed to make a motion to quash Hernandez's arrest; (7) ineffective assistance of trial counsel for failure to make a motion to quash the lineup identification based on suggestiveness; (8) ineffective assistance of appellate counsel on direct appeal

---

[1] I give Hernandez's petition a generous interpretation because it was prepared without the assistance of counsel. *Lewis v. Sternes*, 390 F.3d 1019, 1027 (7th Cir. 2004) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). I reviewed the trial transcripts that were submitted by respondent.

6

for failure to raise trial counsel's ineffectiveness for failing to move to quash Hernandez's arrest and suppress lineup identification; (9) trial counsel was ineffective for failing to call an expert witness to testify about the unreliability of eyewitness identification; (10) direct appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for failing to call an expert witness to testify about the unreliability of eyewitness identification; (11) trial counsel was ineffective for failing to conduct a meaningful pre-trial investigation of the case; (12) direct appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to conduct a meaningful pre-trial investigation; (13) trial counsel was ineffective for failing to file a motion *in limine* seeking to prohibit the State from mentioning Hernandez's co-defendant; (14) direct appellate counsel was ineffective for failing to raise the issue of trial counsel's incompetence for failing to file a motion *in limine* seeking to prohibit the State from mentioning co-defendant's name; (15) trial counsel was ineffective for allowing the police to question petitioner when counsel did not know the facts of the case; (16) direct appellate counsel was ineffective for failing to raise the issue of trial counsel's incompetence for allowing the police to question petitioner without knowing the facts of the case; (17) trial counsel was ineffective for failing to call an expert gang witness;

7

(18) the cumulative effect of trial counsel's incompetence warrants relief; (19) direct appellate counsel was ineffective because he was laboring under a conflict of interest; (20) direct appellate counsel was ineffective for failing to raise instances of the trial court's incompetence; (21) trial counsel was ineffective for failing to object to in-court and out-of-court identifications; (22) direct appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel for failing to object to identifications; (23) trial counsel was ineffective for failing to locate, interview and call witnesses that could have been favorable to petitioner, namely Hector Vasquez, Nicole Nathaniel, Maria Gutierrez, and Elbia Gutierrez; (24) post-conviction appellate counsel was ineffective for failing to raise the issue of trial counsel incompetence for failing to locate, interview and call witnesses; (25) trial counsel was ineffective for failing to mount sufficient attacks on the State's witnesses; (26) post-conviction appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel for failing to subpoena the police photo-books of the Spanish Cobra street gang; (28) direct appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel for failing to subpoena the police photo-books of the Spanish Cobra street gang; and (29) the cumulative effects of these constitutional violations warrants relief.

The federal statute which governs petitions for writs of habeas corpus, 28 U.S.C. § 2254, provides a "highly deferential standard of review." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citing *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). This standard requires that I give state court decisions the benefit of the doubt, only intervening where a state court decision is "objectively unreasonable." *Woodford*, 537 U.S. at 24-27. Under the terms of § 2254, I may grant a petition for habeas corpus only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence" presented during the state court proceedings. 28 U.S.C. § 2254(d).

In addition to this deferential standard, I generally may only grant a petition for a writ of habeas corpus where "the applicant has exhausted the remedies available in the courts of the State" and where the applicant has not procedurally defaulted his claims. 28 U.S.C. § 2254(b)(1)(A); *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991).[2] These limitations are intended to allow state courts

---

[2] Section 2254 also provides, however, that I may deny a writ of habeas corpus on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

a fair opportunity to hear and act on a petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). Procedural default may occur where the petitioner did not comply with state procedural requirements during his appeals in state court such that the state court found these failures to be an "independent and adequate" state law ground for denying his claim. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). When a state court relies on a state procedural ground to avoid reaching the merits of a petitioner's claim, that ground must be clearly and expressly relied upon and must be firmly established and regularly followed. *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000).

To avoid procedural default, a petitioner must, at minimum, "invok[e] one complete round of the State's established appellate review process" for each of his claims. *O'Sullivan*, 526 U.S. at 845. In Illinois, this means one full round of appeals up to and including the filing of a petition for leave to appeal to the Illinois Supreme Court. *Id.* at 845-46; *see also Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (requiring a claim to be raised through one full round of appeals, either on direct appeal of the petitioner's conviction or through post-conviction proceedings, to avoid procedural default).

### III.

Only claims 2, 3 and 4 of the petition have been through a full round of review in the Illinois courts; petitioner has

10

procedurally defaulted the remainder of his claims. Specifically, Hernandez raised claims 1, 5-24, and 27-29, in his post-conviction petition, but not in his subsequent appeal or petition to appeal to the Illinois Supreme Court. Accordingly, they are procedurally barred. *O'Sullivan*, 526 U.S. at 845. Claims 25 and 26 have never been formally raised prior to the present petition, and are also defaulted. *Id.*

These defaulted claims can only be considered if Hernandez can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. The cause and prejudice test has been codified in § 2254, which provides that where a petitioner has failed to develop a factual basis for his claim in state court proceedings, a federal court cannot hold an evidentiary hearing unless the petitioner shows that (1) the claim relies on a new, retroactive constitutional rule or a "factual predicate that could not have been previously discovered through the exercise of due diligence"; and (2) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder could have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A)(ii) & (e)(2)(B); *see also Speitzer v. Schomig*, 219 F.3d 639, 648 n.1 (7th Cir. 2000) (explaining that subsection

(e)(2) codified the "cause and prejudice" test for procedurally defaulted claims). In the absence of cause and prejudice, Hernandez must show a fundamental miscarriage of justice by demonstrating that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The stringent requirements for cause and prejudice and fundamental miscarriage of justice showings apply indiscriminately to Hernandez despite his *pro se* status. *See, e.g., Barksdale v. Lane*, 957 F.2d 379, 385 (7th Cir. 1992).

I first address whether petitioner can show cause. Hernandez asserts the cause for his default on claims 1 and 5-29 lies in his post-conviction appellate counsel. According to the petition, post-conviction appellate counsel deliberately failed to raise these claims in his post-conviction appeal and petition for leave to appeal because counsel, by virtue of his employment at the Illinois State Appellate Defender's program, was acting as an agent of the State of Illinois. Hernandez also invokes Exhibit 1, which is a letter addressed to the office of the State Appellate Defender program in which Hernandez complains that despite the 15 claims raised in his post-conviction petition, post-conviction appellate counsel only raised two issues on appeal and on the petition for leave to appeal. The letter claims that meritorious claims were improperly abandoned by his appointed lawyer. This amounts to an

ineffective assistance of post-conviction appellate counsel claim.[3]

Ultimately, Hernandez cannot established cause. In the absence of a constitutional right to post-conviction appellate counsel, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman,* 501 U.S. at 752 (citing *Wainwright v. Torna,* 455 U.S. 586 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance)); *see also Lane v. Richards,* 957 F.2d 363, 365-66 (7th Cir. 1992); *Buelow,* 847 F.2d at 426. Furthermore, it is also well established that in determining cause "[e]rrors committed by counsel representing a prisoner on collateral attack are not attributed to the state." *Lane,* 957 F.2d at 365 (citing *Coleman,* 501 U.S. at 722). Hernandez tries to overcome this by asserting his post-conviction appellate counsel acted as an agent of the State. This argument has already been made and rejected, however. *Coleman,* 501 U.S. at 753 ("[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation"). A lawyer is his client's agent. *Id.* This remains true even when the source of lawyer's funding is the State. *See Polk County v. Dodson,* 454 U.S. 312, 322, 323 n. 13 (1981) (A

---

[3]Hernandez does not allege or provide evidence concerning "some external impediment preventing counsel from constructing or raising the claim." *Buelow v. Dickey,* 847 F.2d 420, 426-27 (7th Cir. 1988).

13

public defender does "not ac[t] on behalf of the State; he is the State's adversary"). Hernandez has not provided evidence to suggest that his post-conviction appellate counsel was acting in concert with the State to sabotage his appeal or to sever the lawyer-client relationship. Accordingly, he is bound by his lawyer's decision not to pursue all 15 of the claims raised in the initial post-conviction petition. *Coleman*, 501 U.S. at 753-54. Moreover, this argument does not address claims 25-26, which have never been raised prior to the present petition, and were not raised by petitioner himself in his *pro se* state post-conviction petition.

In light of the absence of a showing of cause, I need not determine whether Hernandez can shown prejudice on these claims. Instead, I examine whether failure to consider Hernandez's claims would result in a fundamental miscarriage of justice. *Id.* at 750; *Schlup,* 513 U.S. at 315. The record does not show that Hernandez is probably innocent. *See Schlup*, 513 U.S. at 327. Even taking into account the alleged deficiencies in the Hernandez's representation, there is considerable evidence in the record to sustain his conviction. Specifically, five eyewitnesses placed Hernandez at the scene and with a gun. Two of those eyewitnesses, Nancy Alvarado and Jose Martin Gonzalez, testified they saw Hernandez shoot Gonzalez. The credibility of the defense's alibi witnesses was severely impeached. Therefore, I cannot further

14

consider claims 1 and 5-29.

IV.

A.  Claim 2: Ineffective assistance of trial counsel for failure to object to IPI Criminal 3d No. 3.15.

To establish an ineffective assistance of counsel claim, Hernandez must show that his counsel's performance fell below an objective standard of reasonableness and that he suffered substantial prejudice as a result. *Strickland*, 466 U.S. at 674. Petitioner complains that his trial counsel was ineffective in failing to object to the issuance of IPI Criminal 3d No. 3.15. IPI Criminal 3d No. 3.15 provides:

When you weight the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:
[1] The opportunity the witness had to view the offender at the time of the offense.
[or]
[2] The witness's degree of attention at the time of the offense.
[or]
[3] The witness's earlier description of the offender.
[or]
[4] The level of certainty shown by the witness when confronting the defendant.
[or]
[5] The length of time between the offense and the identification confrontation.

Illinois Pattern Jury Instructions, Criminal, No. 3.15 (3d ed. 1992). Petitioner argues the incorporation of the term "or" between each factor led the jury to deem the identification testimony presented at trial reliable based on only one of the five factors listed. In support, petitioner invokes *People v. Gonzalez*,

15

326 Ill. App. 3d 629, 641 (Ill. App. Ct. 2001) (in light of the committee notes following the instruction, the closeness of the evidence in the case, and the prosecutor's closing statement, issuance of IPI Criminal 3d No. 3.15 with the word "or" between each of the five factors was improper because it may have misled the jury to rely on only a single factor in determining the reliability of identification testimony), and *People v. Herron*, 215 Ill. 2d 167, 830 N.E.2d 467 (Ill. 2005) (reaffirming *Gonzalez*).[4]

In denying this claim in the post-conviction appeal, the Illinois appellate court found that because *Gonzalez* was not decided until 2001 (3 years after the conclusion of petitioner's trial), trial counsel's failure to object on those grounds was not objectively unreasonable or prejudicial. *People v. Hernandez*, No. 1-04-0533, slip op. at 8 (citing *People v. Chatman*, 357 Ill. App. 3d 695, 700, 830 N.E.2d 21, 27 (Ill. App. Ct. 2005)). The court explained that "[w]here the defendant's claim of ineffective assistance is based on a ruling issued after counsel's service to the defendant ended, the claim must fail." *Id.* (citing *Chatman*, 357 Ill. App. 3d at 700, 830 N.E.2d at 27). The case relied on by the court, *Chatman*, specifically rejected the argument that failure to object to IPI Criminal No. 3.15 for the use of the term "or"

---

[4]Although Hernandez does not invoke these cases by name, he identifies Illinois Appellate Court and Illinois Supreme Court precedent addressing the propriety of IPI Criminal No. 3.15. Furthermore, these cases are identified by Hernandez in his post-conviction appeal brief (State Exhibit I).

16

prior to the decision in *Gonzalez* constituted ineffective assistance of counsel. 357 Ill. App. 3d at 700, 830 N.E.2d at 27.

This is not "contrary to" or an "unreasonable application of" *Strickland*. "The Sixth Amendment does not require counsel to forecast changes or advances in the law." *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). Moreover, *Gonzalez* did not declare IPI Criminal No. 3.15 invalid *per se*, instead finding the instruction improper in the face of specific facts, particularly the closeness of the evidence at trial and the prosecutor's closing statement emphasizing the term "or" in the instruction. Similarly, *Herron* did not declare the instruction invalid *per se*. 215 Ill. 2d at 193, 830 N.E.2d at 483 ("The seriousness of risk [that jury misunderstood the applicable law] depends upon the quantum of evidence presented by the State against the defendant.").[5] As noted by the appellate court, five separate eyewitnesses identified Hernandez as the perpetrator. Overall, petitioner cannot show ineffective assistance of trial counsel for failure to object to IPI Criminal No. 3.15.

---

[5]IPI Criminal No. 3.15 was modified in 2003 and the "ors" were removed. *See* IPI Criminal No. 3.15 (4th ed. Supp. 2003); *Herron*, 215 Ill. 2d at 191, 830 N.E.2d at 482.

17

B.  Claim 3: Ineffective assistance of appellate counsel
    for failure to raise trial counsel's ineffectiveness in
    failing to object to IPI Criminal 3d No. 3.15.

Hernandez also argues his appellate counsel on direct appeal
was ineffective in omitting the argument concerning trial counsel's
ineffectiveness in failing to object to IPI Criminal 3d No. 3.15.
To establish an ineffective assistance of appellate counsel claim,
Hernandez must show that failure to raise the contested issue was
objectively unreasonable and that counsel's decision not raise the
issue prejudiced his case. *Strickland*, 466 U.S. at 689; *Mason v.
Hanks*, 97 F.3d 887, 892 (7th Cir. 1996). In order to satisfy the
prejudice prong, Hernandez must show there was a reasonable
probability that raising the issue on direct appeal would have
affected the outcome of his appeal. *Lee v. Davis*, 328 F.3d 896,
901 (7th Cir. 2003).

The Illinois appellate court denied this claim because
Hernandez could not show prejudice under *Strickland*. *People v.
Hernandez*, No. 1-04-0533, slip op. at 9-10. Citing *People v.
Smith,* 341 Ill. App. 3d 530, 794 N.E.2d 367 (Ill. App. Ct. 2003),
the court found that petitioner could not show prejudice in light
of the overwhelming nature of the evidence presented against him.
Moreover, unlike *Gonzalez*, the prosecutor had not improperly argued
during closing argument. *People v. Hernandez*, No. 1-04-0533, slip
op. at 10. Instead, in Hernandez's case, the prosecutor discussed
all five factors outlined in the instruction and did not emphasize

18

the term "or." *Id.* The court also cited *Herron*, 215 Ill. 2d 167, 830 N.E.2d 467, for the proposition that the instruction is not prejudicial "where the evidence was not closely balanced." *People v. Hernandez*, No. 1-04-0533, slip op. at 9.

Petitioner cannot show the appellate court's decision was "contrary to" or an "unreasonable application of" *Strickland*. Appellate counsel has no duty to raise every non-frivolous argument on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Furthermore, the appellate court's finding that Hernandez could not show prejudice is not an unreasonable determination of the facts in light of the evidence. Once again, the appellate court referenced the identification testimony of five separate eyewitnesses in reaching this conclusion. Therefore, this claim also fails.

C. Claim 4: Ineffective assistance of trial counsel for failure to interview and call alibi witnesses.

Hernandez also contends that he received ineffective assistance of counsel because his trial counsel failed to interview and call witnesses who would have helped his defense. Specifically, Hernandez contends his attorney failed to interview and call Jennifer Pinkston, Jeanine Gomolinkski and Abraham Gutierrez as alibi witnesses.

The Illinois appellate court denied the claim on direct appeal with respect to Jennifer Pinkston based on defense counsel's testimony at a post-trial hearing on this issue. *People v. Hernandez*, No. 1-00-1916, slip op. at 8. Defense counsel testified

that he spoke to Jennifer Pinkston before trial and discovered that she could not account for petitioner's whereabouts after 9 p.m. on June 27, 1997, which was approximately three hours prior to the killing of Jorge Gonzalez. He also testified that Jennifer Pinkston's post-trial affidavit did not match the information she gave defense counsel before trial. *Id.*

The court also denied the claim with respect to Jeanine Gomolinski based on defense counsel's testimony at the post-trial hearing. *Id.* Defense counsel testified that he learned from a State investigator who had interviewed Gomolinski that she "was hostile to both [petitioner] and his brother." *Id.* Defense counsel also testified he did not call Gomolinski for strategic reasons, as he did not want to damage the credibility of Valerie Pinkston, whom he considered to be a strong witness for petitioner. Defense counsel believed Gomolinski would testify to a romantic relationship between Valerie Pinkston and petitioner's brother. Valerie Pinkston denied this while on the stand. The appellate court also held that the potential testimony of Jennifer Pinkston and Gomolinski would have been cumulative of the other three alibi witnesses presented at trial. *Id.* at 9.

The appellate court also rejected this claim based on Abraham Guitierrez's affidavit. The court found this argument was without merit because Hernandez did not show how Guitierrez would have assisted his case. *Id.* at 9. Gutierrez's post-trial affidavit

claimed he did not know anything about the shooting, but that he implicated petitioner and his co-defendant brother, Juan Hernandez, to win his own release from police custody. Petitioner argued that Gutierrez's testimony would have contradicted Officer Bemis's testimony that he received an anonymous telephone call implicating Hernandez. The court determined that "[t]here was no testimony at trial that police relied on Gutierrez'[s] information or that Gutierrez made the anonymous phone call. Nor would the outcome of the trial have been different . . . where five eyewitnesses identified defendant as one of the shooters." *Id.* at 9.

The appellate court's analysis of this claim was "not contrary to" or "an unreasonable application of" *Strickland.* Defense counsel's reasons for refusing to call Jennifer Pinkston and Gomolinski are not objectively unreasonable. Nor was the court's finding concerning Gutierrez's post-trial affidavit an unreasonable determination of the facts. Officer Bemis testified at trial that he received an anonymous telephone call, after which he began to investigate petitioner, he never mentioned Gutierrez at trial or to the witnesses during the lineup. Moreover, five eyewitnesses identified petitioner as the perpetrator without having any contact or information concerning the anonymous telephone call. Accordingly, this claim also fails.

V.

For the above reasons, I deny Hernandez's petition for a writ of habeas corpus.

**ENTER ORDER:**

*Elaine E. Bucklo*

_____
**Elaine E. Bucklo**
United States District Judge

Dated: January 22, 2007